UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDY D. S.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-01824-JPH-MG |
| ) | |
| KILOLO KIJAKAZI Acting Commissioner ) | |
| of Social Security[2], ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff, Brandy S., seeks judicial review of the Social Security Administration's decision denying her petition for Disability Insurance Benefits and Supplemental Security Income. She argues that the Administrative Law Judge ("ALJ") erred because: (1) she failed to account for relevant evidence in determining Plaintiff's residual functional capacity (RFC); (2) she failed to sufficiently articulate whether Plaintiff met or equaled a Listing at Step Three; (3) her finding that Plaintiff does not have tethered cord syndrome is not supported by substantial evidence; and (4) her findings at Step Five contradict

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Under Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

the testimony of the Vocational Expert. *See* dkt. 20 at 16. For the reasons that follow, the ALJ's decision is **REVERSED and REMANDED**.

# I.
# Facts and Background

On December 7, 2016, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging that her disability began on October 1, 2015. Dkt. 15-2 at 16. Her claim was denied initially in February 2017, and on reconsideration in July 2017. *Id.* She then had a hearing in January 2019 before ALJ T. Whitaker, who denied Plaintiff's claims on February 22, 2019. *Id.* at 13, 28. The SSA's Appeals Council denied Plaintiff's request for review. *Id.* at 2–3.

In reaching her conclusion that Plaintiff was not disabled, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4). *Id.* at 16–28. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[3] since the alleged onset date of October 1, 2015. *Id.* at 18.

- At Step Two, Plaintiff had "the following severe impairments: degenerative disc disease, spondylosis, sixth vertebrae and tethered spinal cord of the lumbar spine with sciatica, coccydynia, heel spurs, plantar fasciitis, and obesity." *Id.* at 19.

- At Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526). *Id.* at 21.

---

[3] Substantial gainful activity is defined as work activity that is both "substantial" ("involves doing significant physical or mental activities") and "gainful" ("usually done for pay or profit, whether or not a profit is realized"). 20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b).

2

- After Step Three, but before Step Four, Plaintiff had the residual functional capacity ("RFC") "to perform a range of light work . . . except she can lift, push, pull, and carry twenty pounds occasionally and ten pounds frequently.  She can sit for six hours of an eight-hour workday.  She can stand and walk, in combination, for four hours of an eight-hour workday.  She is limited to work that allows for the individual to sit and stand alternately provided, that, at one time, she can sit, stand, and walk each for no greater than thirty minutes; and further provided that she is in the new position for at least five minutes before resuming the prior position.  She can occasionally climb ladders, ropes, stairs, and scaffolds.  She can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps.  Sher can have no concentrated exposure to respiratory irritant such as fumes, odors, dusts, and gases.  She is limited to simple, tangible, and routine work." *Id.* at 22.

- At Step Four, Plaintiff "unable to perform any past relevant work." *Id.* at 26.

- At Step Five, Plaintiff was not "under a disability," as defined by the Social Security Act, during the relevant time period. *Id.* at 28.

On July 7, 2020, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g).  Dkt. 1.

## II.
## Applicable Law

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  When an applicant seeks judicial review of a benefits denial, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

3

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g).

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard or is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

### III.
### Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ failed to account for relevant evidence in determining Plaintiff's residual functional capacity (RFC); (2) the ALJ failed to

4

sufficiently articulate whether Plaintiff met or equaled a Listing at Step Three; (3) the ALJ's finding the Plaintiff does not have tethered cord syndrome is not supported by substantial evidence; and (4) the ALJ's findings at Step Five contradict the testimony of the Vocational Expert. Dkt. 20 at 16. The Court need only address Plaintiff's argument related to the ALJ's RFC finding because, as explained below, the ALJ's error at that step "requires reversal." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

### A. The RFC Standard

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must . . . identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Paul,* 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010).

Here, the ALJ found that Plaintiff had the RFC to perform light work with some limitations:

> [T]he Claimant has the residual functional capacity to perform a range of light work . . . except she can lift, push, pull, and carry twenty pounds occasionally and ten pounds frequently. She can sit for six hours of an eight-hour workday. She can stand and walk, in combination, for four hours of an eight-hour workday. She is limited to work that allows for the individual to sit and stand alternately provided, that, at one time, she can sit, stand, and walk each for no greater than thirty minutes; and further provided that she is in the new position for at least five minutes before resuming the prior position. She can occasionally climb ladders, ropes, stairs, and scaffolds. She can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps. Sher can have no concentrated exposure to respiratory irritant such as fumes, odors, dusts, and gases. She is limited to simple, tangible, and routine work.

Dkt. 15-2 at 22.

Plaintiff argues that the ALJ erred in determining her RFC because the ALJ failed (1) to provide sufficient accommodations for Plaintiff's mild functional limitations; (2) to consider all of Plaintiff's medically determinable severe and non-severe impairments; and (3) to consider Plaintiff's need for unscheduled absences, breaks, and time off task. Dkt. 20 at 17–23, 25–26. In regard to her mild functional limitations, Plaintiff alleges that the ALJ failed to consider and provide accommodations for her mental "symptoms and limitations" in determining her RFC. *Id.* at 17. The Commissioner responds that "the ALJ adopted functional capacity restrictions based on her

6

consideration of Plaintiff's impairments" and "further accommodated a variety of occasional postural, respiratory, and mental limits." *See* dkt. 21 at 12–13.

## B. Plaintiff's Mild Mental Functional Limitations

In determining a claimant's RFC, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5, at *14; *Villano v. Astrue*, 556 F.3d at 563. Here, the ALJ found at Step Two that Plaintiff "has a mild limitation" in three of the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Dkt. 15-2 at 20–21. A "mild limitation" means that a person's ability to function "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F(2)(b) (Mar. 14, 2018).

However, the ALJ's decision does not show that she took Plaintiff's mild mental functional limitations into account in her RFC analysis. Nowhere in the ALJ's RFC analysis does she discuss or even mention Plaintiff's mild mental limitations. Dkt. 15-2 at 22–26.

The ALJ's failure to consider the effects of these non-severe mental functional limitations "requires reversal." *Villano*, 556 F.3d at 563; *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment. A failure to fully consider the impact of non-severe impairments

7

requires reversal.") (citations omitted).  While the Commissioner relies on *Jozefyk v. Berryhill* to argue that Plaintiff did "not identif[y] any medical opinion . . . or other objective evidence" to support greater restrictions on her mental functioning, the ALJ in *Jozefyk* actually considered the plaintiff's mental impairments in the RFC discussion.  923 F.3d 492, 498 (7th Cir. 2019).  Here, the mild mental impairments found at Step Two are notably absent from the ALJ's RFC analysis.

Indeed, several district courts in this circuit have remanded where an ALJ fails to consider mental limitations in the RFC analysis similar to the circumstances of this case.  For example, in *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011), the court remanded an ALJ's decision, finding the RFC analysis inadequate because it did not account for the claimant's mild depression, which limited claimant's daily activities, social functioning, concentration, persistence, and pace.  *See also Vinzani v. Berryhill*, No. 2:16-CV-62-JEM, 2017 WL 1161013, at *4 (N.D. Ind. Mar. 28, 2017) (remanding because ALJ did not incorporate non-severe "mental limitations into the RFC"); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (same).

Nevertheless, the Commissioner later contends that Plaintiff "does not identify any objective medical corroboration for" increased limits due to her "mild mental impairments."  Dkt. 21 at 14.  But regardless of what evidence was presented, the ALJ found that Plaintiff had mild functional limitations at Step Two of the sequential evaluation process.  Dkt. 15-2 at 20.  In so finding,

the ALJ cited medical records showing that Plaintiff has been "diagnosed with depression, anxiety, and premenstrual dysphoric disorder." *Id.* at 19. Again, nowhere in the ALJ's RFC discussion does she reference these diagnoses or the effect they may have on Plaintiff's ability to function in an employment setting. *See generally id.* at 22–26. So reversal is required. *Villano*, 556 F.3d at 563.

This result is not changed by the Commissioner's argument that the ALJ's hypothetical questions posed to the vocational expert (VE) "matched all of the stated limits she found in her [RFC] finding." Dkt. 21 at 15. "Again, and again, [the Seventh Circuit] ha[s] said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical questions presented to the [vocational expert] must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (listing cases). When an ALJ's hypothetical does not adequately capture a claimant's restrictions on concentration, persistence, and pace, district courts should remand the ALJ's decision. *See, e.g., Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2011).

Here, the Commissioner's brief doesn't make clear which of Plaintiff's RFC-related arguments this statement was intended to address. To the extent it addresses Plaintiff's argument about the ALJ's failure to consider her mental limitations, the hypotheticals posed to the VE did not adequately communicate the mental limitations noted by the ALJ at Step Two. In fact, the ALJ's hypothetical did not mention Plaintiff's mild limitation in concentration, persistence, and pace. Dkt. 15-9 at 34–36. Rather, the ALJ included in the

9

hypothetical a limitation to "simple, routine, and tangible work" with "only occasional interaction with the public, coworkers, and supervisors." *Id.* at 34. The Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt*, 758 F.3d at 858–59.

* * *

In sum, the ALJ's failure to adequately discuss Plaintiff's mild functional limitations in assessing Plaintiff's RFC requires remand. Because this failure constitutes reversible error on its own, *Villano*, 556 F.3d at 563, there is no need to address Plaintiff's remaining arguments related to the ALJ's RFC finding, her alleged errors at Step Three and Step Five, and her finding that Plaintiff does not have tethered cord syndrome.

## IV.
## Conclusion

For these reasons, the ALJ's decision is **REVERSED and REMANDED** for further proceedings. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 3/31/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Jennifer Michelle Hess
HESS HESS & DONNELSON LLP
jen.hess@hhdlegal.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov